# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | | |
|---|---|---|
| GLENDA BELCHER, | ) | |
| Plaintiff | ) | |
| v. | ) | No. 3:05-cv-9 |
| KINDRED NURSING CENTERS LIMITED PARTNERSHIP, d/b/a JEFFERSON CITY HEALTH AND REHABILITATION FACILITY, | ) ) ) | |
| Defendant | ) ) | |

## MEMORANDUM OPINION

This is an action for age discrimination under the Tennessee Human Rights Act (THRA), T.C.A. § 4-21-407 (2005). Plaintiff claims that her employment with the defendant was terminated as the result of age discrimination. Currently pending is the defendant's motion for summary judgment [Court File #15]. For the reasons that follow, the motion will be granted and this action dismissed.

I.

*Factual Background*

The following factual allegations are considered in the light most favorable to the plaintiff.

In October 1999, plaintiff Glenda Belcher began her employment with Kindred as a licensed practical nurse (LPN) working the second shift from 3:00 p.m. to 11:00 p.m. Kindred operates as a nursing home. Plaintiff was responsible for administering patient medications, contacting and notifying the physician of any changes with the patients, and acting as the primary contact for the physician in the unit she worked during her shift. In addition, as part of her duties, plaintiff was responsible for providing patient care in a manner that assured patient safety and promoted the patients' well being.

Although plaintiff was promoted and received good evaluations during her tenure at Kindred, she had also been issued three disciplinary action notices for failure to follow Kindred's policies and procedures. First, in May 2001, Belcher was issued a written warning for "negligently performing her assigned job duties" in failing to report a patient who had fallen out of bed. Second, on April 22, 2003, Kindred cited plaintiff for signing a patient's medication record as having administered

2

medication to the patient five hours before the medication actually was administered. Plaintiff was issued a third warning on February 5, 2004, for failing to properly assess that a new patient with a history of a fractured left hip was at risk for falling.

The event which ostensibly precipitated plaintiff's termination occurred on July 20, 2004. On that date, plaintiff was working her regular 3:00 p.m. to 11:00 p.m. shift along with Linda Bryant and Norma Vallon, both certified nursing assistants. When plaintiff reported for her shift on that day, Danny Gambrell, the day shift nurse whom plaintiff relieved, reported to plaintiff that there had been some behavior issues with a patient. Mr. Gambrell informed plaintiff that the patient had threatened to kill his roommate and also hit a nurse over the head. Based on the patient's behavior, he was transported to Jefferson Memorial Hospital for evaluation and possible in-patient treatment. At that time, Mobile Crisis was to check the patient into the hospital, if appropriate. Mobile Crisis determined that it could not admit the patient to Jefferson Memorial Hospital or offer any further treatment and released the patient back to the Facility. Mr. Gambrell reported to plaintiff that before the patient was sent to Jefferson Memorial Hospital, the patient had been placed on a 15-minute monitoring program because of his earlier threats to kill his roommate. Patients on such a program must be checked every 15 minutes to observe and monitor behavioral changes.

Because Mobile Crisis would not admit the patient to Jefferson Memorial Hospital, the patient was sent back to the Facility around 6:30 p.m., which was during plaintiff's shift. When he returned, he was placed in his room. At some point after he returned, the patient got out of bed and began walking into other patients' rooms. In order to keep the patient from walking around the unit and disturbing other patients, plaintiff placed the patient in a wheelchair, which failed to keep him from wandering the floor. The patient got out of the wheelchair and continued to enter other patients' rooms. At around 8:00 p.m., the patient picked up an over-the-head bed table in one of the rooms and attempted to throw it through a window. Ms. Bryant attempted to stop the patient from throwing the table, but he pulled her hair and tried to choke her. Plaintiff and Ms. Bryant then placed the patient back in the wheelchair where he continued to try to trip visitors walking down the hallway. Plaintiff described the patient's demeanor as agitated, and the patient expressed a desire to leave the Facility.

Because of the patient's behavior, Ms. Bryant and Ms. Vallon expressed to plaintiff that they "cannot get their work done. Something's got to be done with that man." Ms. Bryant and Ms. Vallon requested that plaintiff approve placing the patient in a geriatric chair to "sit there for awhile," in order for Ms. Bryant and Ms. Vallon to "get their work done." Plaintiff agreed to the request and placed the patient

in a geriatric chair. A geriatric chair is high backed with a table top that locks in place across the lap of the patient and upon which the patient may rest his hands.

Kindred's procedures require that in order for an LPN to place a patient in a geriatric chair, a physician's order is required. Additionally, Kindred's procedures require that if restraints are used, the patient's family must be notified that restraints are necessary and will be used on the patient. Plaintiff never called a physician to obtain an order regarding the patient, never charted the need for use of restraint, nor did she notify the patient's family that he had been placed in a geriatric chair restraint. In addition, Kindred's procedures require that the Director of Nursing be notified that a patient has been placed in restraints, but plaintiff did not do so. Kindred's procedures also require that the patient be removed from the restraint every two hours to use the bathroom or reposition his body. Despite plaintiff's knowledge that a person placed in a restraint must be released every two hours, she did not remove the patient for the duration of her shift. Kindred's restraint procedures further prohibit employees from using restraints for "staff convenience."

After the patient had been restrained in a geriatric chair, plaintiff administered Haldol to calm his behavior. Plaintiff reported that the patient's behavior did not change after he was given the Haldol, and she kept him in the chair for the remainder of her shift. She made no attempt to release the patient from the

5

geriatric chair before she left her shift for the night. Despite restraining the patient in a geriatric chair for more than two hours by the end of her shift, plaintiff testified that she "didn't know that it was her responsibility to release him from the chair before she left." Plaintiff did not release the patient from the geriatric chair during her shift to use the restroom because he did not ask to do so. She testified that she would have taken the patient to the bathroom had he asked to go, but because he did not ask to go to the bathroom there was no need for her to release him.

The patient was left in the geriatric chair for the remainder of plaintiff's shift, from 8:00 p.m. to 11:00 p.m., and also remained in the chair for the duration of the next shift covered by Kim Kloepfer from 11:00 p.m. to 7:00 a.m. When Ms. Kloepfer arrived, plaintiff reported the situation with the patient and instructed Ms. Kloepfer that if the patient did not calm down, he could have another dose of Haldol at 1:00 a.m. In addition, plaintiff reported that she did not have a physician's order to restrain the plaintiff in the geriatric chair.

When plaintiff arrived for her shift the next day, July 21, 2004, Bonnie McGrigg, another Kindred LPN, reported the patient's condition to the plaintiff. Ms. McGrigg reported that the patient "was left sitting in the chair all night on the midnight shift and he was wet." The Director of Nursing, Karen Hamrick, and April Browning, the Assistant Director of Nursing, met with plaintiff on July 21, 2004, to

6

discuss the incident with the patient. Ms. Hamrick told plaintiff that she was suspended for "suspected abuse" pending an investigation into the incident.

Plaintiff returned after her suspension and met with Ms. Waldrop, who informed plaintiff that she was being terminated for leaving the patient restrained in a geriatric chair without a physician's order, without notifying the patient's family or the Director of Nursing, and without releasing the patient every two hours. In addition to terminating plaintiff, Kindred terminated the employment of Ms. Kloepfer and Amy Mulneix, CNA, for not removing the patient from the geriatric chair during the 11:00 p.m. to 7:00 a.m. shift.

Plaintiff is over 40 years of age. However, Ms. Kloepfer and Ms. Mulneix are both under 40 years of age. Kindred determined that neither Ms. Bryant nor Ms. Vallon should be terminated, as they did not work with plaintiff for more than one and a half hours while the patient was restrained. Of the three CNAs who were working during the 11:00 p.m. to 7:00 a.m. shift, however, Kindred determined that only Ms. Mulneix' actions warranted termination because of the three, one CNA left sick shortly after the shift began and the other was transferred to another unit shortly after the shift began. Plaintiff, however, feels that "everybody involved should have been fired." Plaintiff claims that four CNAs who most directly cared for the patient that evening were not terminated, and that all four of these CNAs were younger than

7

plaintiff. She also suggests that Kindred's policy and procedural manual is unclear as to whether a "lap table" may even be considered a restraint. Plaintiff further contends that Ms. Hamrick made unflattering comments about the plaintiff during the two years preceding her termination including that, "she is nothing but an old bitch who thinks she is hot," and that "that bitch will pay." These comments were purportedly made by Ms. Hamrick to Ms. Bowlin while she and Ms. Hamrick were taking smoking breaks. Plaintiff also claims that Ms. Hamrick had referred to an African-American employee with a racially derogatory term.

After plaintiff's termination, Ms. Bowlin testified that Ms. Hamrick said to her, "I told you I would get rid of the old bitch. But she didn't say it about the other girl, just about Glenda. And she said the reason she fired Amy was because Amy was a CNA, and she had to fire someone else besides Glenda so that it wouldn't look so bad or obvious."

II.
*Summary Judgment Standards*

Pursuant to Rule 56, summary judgment shall be rendered when requested if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

8

any material fact and that the moving party is entitled to judgment as a matter of law. It is the burden of the party seeking summary judgment to show the court that, under uncontradicted facts, the moving party is entitled to judgment as a matter of law. Summary judgment is intended to provide a quick, inexpensive means of resolving issues as to which there is no dispute regarding the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In assessing the validity of a summary judgment motion, the court views the pleadings, depositions, answers to interrogatories, admissions, and competent affidavits in a light most favorable to the opponent of the motion. However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element of that party's case, and on which the party will bear the burden of proof at trial. *Catrett*, 477 U.S. at 322.

III.

### *Applicable Legal Standard*

Age discrimination claims brought under the THRA are analyzed under the same analytical framework as claims asserted under the Age Discrimination in Employment Act (ADEA). *See Dennis v. Whiteway Cleaners, LP*, No. M2002-00502-COA-R3-CV, 2003 WL 724477, at *3 (Tenn. Ct. App. March 4, 2003).

In order to survive summary judgment, plaintiff must offer either direct evidence of unlawful discrimination or present sufficient evidence under the framework of proof as articulated in *McDonnell Douglas Corp. v. Greene*, 411 U.S. 792 (1973). If plaintiff sets forth substantial direct evidence of unlawful discrimination, this court must engage in a mixed-motive analysis. Under this analysis, if plaintiff presents direct evidence of discriminatory intent in connection with her discharge, "the burden of both production and persuasion shifts to defendant to prove that it would have terminated plaintiff even if it had not been motivated by impermissible discrimination." *See Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570-71 (6th Cir. 2003).

If, however, plaintiff is unable to present direct evidence of age-based discrimination, plaintiff must present sufficient evidence under the *McDonnell*

*Douglas* framework. Under this framework, plaintiff must first establish a *prima facie* case of discrimination, thereby creating a presumption of discrimination. If plaintiff satisfies her *prima facie* burden, the burden of production then shifts to Kindred to present evidence that its employment decision was based on a legitimate, non-discriminatory employment reason, thereby rebutting the presumption of discrimination. Once Kindred has presented evidence of a legitimate, non-discriminatory reason for its employment action, the presumption disappears, and plaintiff must prove that Kindred's legitimate, non-discriminatory reason is actually a pretext for discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142-43 (2000). Although the evidentiary burden shifts back and forth under the *McDonnell Douglas* framework, the ultimate burden of persuasion to prove that age was a factor in her termination remains at all times with the plaintiff. *Id.* at 143.

### IV.
### *Analysis*

Direct evidence of discrimination has been described as "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *See Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2002). In determining whether remarks constitute direct evidence

of discrimination, the context in which the alleged remarks were made must be considered. If the discriminatory remarks were made while implementing an adverse employment action, courts are likely to find such remarks reveal animus on the part of the employer. *See Erwin v. Potter*, No. 02-5334, 2003 WL 200514367, at *5 (6th Cir. Nov. 4, 2003). On the other hand, "occasional disparaging remarks made during the regular course of business about age or other protected characteristics are much more likely to be considered the kind of "isolated and ambiguous" comments that do not trigger employer liability. *See id.* at *5.

Plaintiff suggests that several comments allegedly made over the years by Ms. Hamrick evidence discriminatory intent with respect to the plaintiff. Plaintiff suggests that at some time the comment, "out with the old, in with the new," was overheard. However, there is no evidence as to when this statement was made or that the statement was actually made by Ms. Hamrick. The comment is isolated and ambiguous and there is no suggestion as to how it might be admissible at trial. The only other comments attributed to Ms. Hamrick with regard to the plaintiff were those in which it was suggested that she called the plaintiff a "bitch," an "old bitch," and stated "I told you I would get the old bitch." These comments, if made, appear to have been made while she was on smoking breaks with Ms. Bowlin. While they might suggest that Ms. Hamrick did not like the plaintiff, they do not suggest that she

terminated her because of her age. I find that there is no direct evidence of discrimination which might be presentable to the jury.

Even if it is assumed that plaintiff has demonstrated a *prima facie* case of discrimination, defendant has come forward with a legitimate, non-discriminatory reason for plaintiff's termination. Plaintiff committed a serious violation of Kindred's policies and procedures when she placed a patient in a restraint without releasing him for the duration of her shift. She failed to obtain a physician's order, failed to chart the need for use of a restraint, failed to notify the Director of Nursing, failed to notify the patient's family that the patient had to be restrained, and failed to release the patient from restraint every two hours, all as required by Kindred's policies and procedures. Not only was the plaintiff fired from her job for these infractions, two other employees, both under 40 years of age, were also fired. Plaintiff has failed to come forward with any evidence to indicate that these reasons were a pretext for discrimination.

There is no dispute that the incident occurred and that the infractions were serious enough that three employees were terminated over them. There is no evidence in the record upon which a reasonable jury could conclude that the precipitating incident was a pretext for discrimination against the plaintiff. It would only be conjecture to conclude that Ms. Hamrick wished to terminate the plaintiff

because of her age and utilized the incident with the restraint chair as a pretext for terminating the plaintiff based on her age. The jury would also have to speculate that Ms. Hamrick also terminated two employees outside of the protected age category just to "cover up" the discriminatory employment action. There is simply no evidence in the record upon which the jury could support such wild speculation.

Plaintiff suggests that there is a dispute with regard to whether the chair was even a "restraint" as defined by defendant's regulations. Even if there was a dispute, at best it only suggests that defendant misinterpreted one of its regulations, not that it engaged in any age discrimination.

V.

*Conclusion*

In light of the foregoing, defendant's motion for summary judgment [Court File #15] will be granted, and this action dismissed.

Order accordingly.

                                                 *s/ James H. Jarvis*
                                              UNITED STATES DISTRICT JUDGE